UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-22838-ALTMAN/Reid

**MARIA AMAYA**,

    *Plaintiff*,

v.

**THOMAS J. VILSACK**, *Secretary,*
*United States Department of Agriculture*,

    *Defendant*.

_____/

## ORDER

Our Plaintiff, Maria Amaya, has sued Thomas J. Vilsack, Secretary of the U.S. Department of Agriculture ("USDA"), "to recover damages for discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964." Amended Complaint ("Amnd. Compl.") [ECF No. 8] ¶ 1. Amaya, who works at the USDA's Miami office as a Supervisor Plant Protection and Quarantine Officer, *id.* ¶¶ 12–13, alleges that she was the target of "an escalating and ongoing hostile pattern of discrimination, harassment, and retaliation . . . and ultimate retaliatory pre-textual discipline" by "Louis Volpe[,] Ms. Amaya's direct supervisor[.]" *Id.* ¶¶ 15–20. Amaya's Amended Complaint asserts two counts under Title VII: one for "discrimination based on sex" (Count I), *id.* at 15 (cleaned up); and one for "retaliation for reporting discrimination based on sex" (Count II), *id.* at 19 (cleaned up).

Vilsack, our Defendant, has since filed a Motion to Dismiss ("MTD") [ECF No. 16], asking us to dismiss the Amended Complaint *both* "on the grounds that [it] is a shotgun pleading" *and* because it fails to state a claim. MTD at 1. Given our "duty" to dispose of impermissible shotgun pleadings "at the earliest stages of litigation," *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), we'll consider Vilsack's shotgun-pleading argument before proceeding to the merits.

## THE LAW

To comply with federal pleading standards, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Federal Rules also require plaintiffs to "state [their] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b). As the Eleventh Circuit has explained, a complaint is a shotgun pleading if it:

> (1) contains multiple counts where each count adopts the allegations of all preceding counts; (2) is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) fails to separate into a different count each cause of action; or (4) asserts multiple claims against multiple defendants without specifying which defendant is responsible for which act.

*Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019). All shotgun pleadings share two characteristics. *See Dorman v. Palm Beach Cnty.*, 2020 WL 2078527, at *1 (S.D. Fla. Apr. 30, 2020) (Altman, J.). *First*, they "fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). *Second*, they "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (cleaned up). Generally, when a district court is faced with a shotgun pleading, "the court should require the plaintiff to replead his claims." *Gilbert v. Daniels*, 642 F. App'x 716, 718 (11th Cir. 2015) (first citing *Byrne*, 261 F.3d at 1128–33; then citing FED. R. CIV. P. 12(e)); *see also Vibe Mirco*, 878 F.3d at 1296 ("When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds.").

**ANALYSIS**

Vilsack argues that Amaya's Amended Complaint falls within the third category of shotgun pleading because it "fails to separate into a different count each cause of action." *Embree*, 779 F. App'x at 662. To avoid this pitfall, a complaint should state "each claim founded on a *separate transaction or occurrence* . . . in a separate count," *Gabriel v. Windy Hill Foliage Inc.*, 2022 WL 2288687, at *2 (11th Cir. June 24, 2022) (emphasis added) (quoting FED. R. CIV. P. 10(b)), and each count must "state with *specificity* both the factual and legal basis for the claim it sets forth," *McKenzie v. E.A.P. Mgmt. Corp*, 1998 WL 657524, at *1 (S.D. Fla. July 27, 1998) (Dimitrouleas, J.) (emphasis added). In the context of Title VII, "each theory of liability" on which the discrimination claim is based constitutes "a separate cause of action"—and therefore must be pled in a separate count.[1] *Elliot v. Cleanwrx, Inc.*, 2019 WL 6769742, at *1–2 (S.D. Fla. Dec. 12, 2019) (Scola, J.); *see also Hernandez v. EEOC*, 2021 WL 1062230, at *2 (S.D. Fla. Mar. 19, 2021) (Moreno, J.) (dismissing complaint as a shotgun pleading because it "fail[ed] to separate . . . causes of action" for "harassment (sexual and non-sexual) and a hostile work environment[ ] on the basis of sex, national origin, and disability . . . into different counts" (cleaned up)).

Amaya labels Count I of her Amended Complaint a Title VII claim for "discrimination based on sex[.]" Amnd. Compl. at 15 (cleaned up). But, as Vilsack's Motion to Dismiss correctly points out, this count sets forth factual allegations supporting multiple theories of liability (and, therefore, multiple *claims*), including "hostile work environment and disparate treatment." MTD at 4. For example, Count I alleges that the "Defendant's *disparate treatment* of Plaintiff was *sufficiently severe and pervasive to adversely*

---

[1] A plaintiff can proceed with a Title VII claim for employment discrimination under several different theories, including "(1) pattern and practice; (2) hostile work environment; (3) constructive discharge; (4) mixed motive; (5) disparate treatment; (6) failure to promote; and (7) retaliation." *Elliot v. Cleanwrx, Inc.*, 2019 WL 6769742, at *1–2 (S.D. Fla. Dec. 12, 2019) (Scola, J.) (citing *Moody v. InTown Suites*, 2006 WL 8431638, at *1 n.2 (N.D. Ga. Feb. 1, 2006)).

3

*alter the terms and conditions of Plaintiff's employment* with Defendant." Amnd. Compl. ¶ 96 (emphases added). To state a hostile-work-environment claim, a plaintiff must show that the harassment was sufficiently "severe or pervasive . . . '[to] alter the conditions of the [plaintiff's] employment.'" *Johnson v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (cleaned up) (quoting *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 81 (1998)). But harassment is irrelevant to a disparate-treatment claim. *Cf. Vellels v. Atlanta Ind. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005) ("In order to establish a prima facie case [for a disparate-treatment claim] . . . the plaintiff must demonstrate only that: (i) he or she belonged to a protected class; (ii) he or she was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, he or she was rejected; and (iv) the position was filled with an individual outside the protected class." (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973))).

Conversely, Amaya's allegation that her supervisor was "randomly and unjustifiably issuing unfair discipline to Ms. Amaya in a *disparate fashion*, such as issuing a 14-day suspension without pay to Plaintiff, without good cause," Amnd. Compl. ¶ 90 (emphasis added), is relevant to her disparate-treatment claim—but *not* her hostile-work-environment claim, *cf. Williams v. Perry Slingsby Sys. Inc. Technip Grp.*, 2008 WL 11333634, at *2 n.1 (S.D. Fla. Oct. 15, 2008) (Hurley, J.) ("[I]n order to establish a prima facie hostile work environment claim under either Title VII, the aggrieved plaintiff must show (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on his status as a protected class member; and (4) the harassment affected a term or condition or privilege of his employment." (first citing *Foley v Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003); and then citing *Frank v. Xerox Corp.*, 347 F.3d 130 (5th Cir. 2003))).

Throughout Count I, in fact, Amaya shifts between different theories of liability—sometimes even in the same sentence. *See, e.g.*, Amnd. Compl. ¶ 90 ("Plaintiff engaged in protected activity when

4

she repeatedly complained of Mr. Volpe's disparate treatment, i.e., engaging in a hostile pattern of discrimination, harassment, and retaliation against Ms. Amaya[.]"). She cannot do that. *See Williams*, 2008 WL 11333634, at *2 ("[I]f plaintiff is alleging hostile work environment, disparate treatment, wrongful termination, or unlawful retaliatory discharge, each of those distinct legal claims or legal theories requires a separate count[.]"). And, by incorporating the previous eighty-six paragraphs, Amnd. Compl. ¶ 87 ("Plaintiff incorporates and re-alleges paragraphs 1-86 herein.")—which similarly allege different theories of liability, *see, e.g.*, *id.* ¶ 82 ("Defendant's unlawful conduct toward Plaintiff created a *discriminatory, hostile and offensive work environment* because of Plaintiff's sex." (emphasis added)); *id.* ¶ 26 ("Defendant did not commit this conduct with the *male employees* as it repeatedly did to *female employee* Ms. Amaya." (emphases added))—Amaya further muddles her pleading. The Defendant is thus "left to guess" which claim Amaya is *actually* advancing in Count I, *McDonough v. City of Homestead*, 2023 WL 3035215, at *2 (11th Cir. Apr. 21, 2023); *see also* MTD at 6 ("As best as Defendant can interpret the Amended Complaint, Plaintiff attempts to bring causes of action for substantive hostile work environment[.]")—the hallmark of a shotgun pleading, *see Weiland*, 792 F.3d at 1323 ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.").

Amaya tries to save her faulty pleading by arguing that Rule 8 only prevents a plaintiff from including in a single count multiple "claims"—not multiple "theories." Resp. [ECF No. 22] at 4 ("Defendant's argument is misleading in that the case law references 'claims', while here, Defendant references 'theories[.]'"). But, as our cases have made clear, "[e]ach distinct theory . . . is a separate cause of action that must be asserted independently and with corresponding supporting factual allegations." *Ortiz v. Carnival Corp.*, 2020 WL 6945958, at *1 (S.D. Fla. Nov. 25, 2020) (Scola, J.) (collecting cases). So, Amaya's semantic distinction makes no legal difference.

5

Count II—ostensibly for "retaliation for reporting discrimination based on sex," *see* Amnd. Compl. at 19 (cleaned up); *see also* Resp. at 5 ("[Count II] pleads retaliation concerning the reporting of sex-based discrimination.")—fares no better. That's because Count II advances two distinct claims: a discrete retaliation claim and a claim based on a "retaliatory hostile work environment." *See Du v. McDonough*, 2023 WL 4456873, at *2 (M.D. Fla. July 11, 2023) (Honeywell, J.) ("A cause of action based on a retaliatory hostile work environment has been recognized by the Eleventh Circuit." (citing *Babb v. Sec'y, U.S. Dep't of Veterans Affs.*, 992 F.3d 1193, 1206 (11th Cir. 2021))); *Perkins v. Lynch*, 169 F. Supp. 3d 1246, 1254 (N.D. Ala. 2016) ("A retaliatory hostile work environment claim is not based on a single discrete act of retaliation, but instead is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002))).

A plaintiff can advance a discrete retaliation claim when an employer takes *any* adverse action against her for engaging in protected conduct. *See Morgan*, 536 U.S. at 114 (noting that "termination, failure to promote, denial of transfer, or refusal to hire" are the kinds of adverse actions a plaintiff may rely on to assert a discrete retaliation claim); *see also Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (holding that, to establish a prima facie claim of discrete retaliation, the plaintiff must show "(1) that she engaged in statutorily protected activity, (2) that she suffered an adverse action, and (3) that the adverse action was causally related to the protected activity." (cleaned up)). By contrast, a claim of retaliatory hostile work environment requires the plaintiff to prove that her employer retaliated against her for engaging in protected conduct *by creating a hostile work environment*. *See White v. U.S. Pipe*, 2022 WL 17364253, at *6 (N.D. Ala. Dec. 1, 2022) ("Retaliatory hostile work environment claims thus have three elements: (1) the plaintiff engaged in protected activity; (2) a causal connection existed between the protected activity and complained of conduct; and (3) the conduct complained of 'might have dissuaded a reasonable worker from making or supporting a charge of

discrimination.'" (first citing *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); and then quoting *Tonkyro v. Sec'y, U.S. Dep't of Veterans Affs.*, 995 F.3d 828, 836 (11th Cir. 2021))). Because these are separate claims, in short, they must be pled in separate counts. *See Riley v. CSX Transp. Inc.*, 2023 WL 5302973, at *1 (M.D. Fla. Aug. 17, 2023) (Howard, J.) ("[I]f [a] Plaintiff intends to assert substantive or retaliatory hostile work environment claims, she must set forth those claims in separate counts and identify the specific factual allegations on which each claim is based." (citing *Palmer v. Albertson's LLC*, 418 F. App'x 885, 889–90 (11th Cir. 2011))).

Needless to say, Amaya didn't do that. Instead, Count II alleges *both* that Amaya's supervisor took discrete retaliatory actions against her (a discrete retaliation claim), *see e.g.*, Amnd. Compl. ¶ 109 ("Defendant intentionally, repeatedly, and pervasively engaged in and ratified this unlawful employment practices which in turn allowed the continued harassment of Plaintiff and prevented her from transfer to or being hired by any other federal agency interested in hiring Ms. Amaya[.]"), *and* that he created a retaliatory hostile work environment, *see, e.g., id.* ¶ 109 ("Defendant intentionally created an environment where every did Plaintiff did and everything alleged would be bolstered into false grounds to discipline her in retaliation."). Because Count II "contains allegations related to . . . at least [two] different claims for relief," *Elliot*, 2019 WL 676942, at *1, the Amended Complaint is a shotgun pleading.

In her Response, Amaya tries to clarify that "Count II is distinctly focused on Retaliation . . . specifically stemming from reporting discrimination based on Sex." Resp. at 5. Two problems with this. *One*, a plaintiff cannot amend her faulty complaint through her response to a motion to dismiss. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is limited to the four corners of the complaint."); *Clark v. Ocwen Loan Servicing*, 2018 WL 1804349, at *3 n.6 (N.D. Ga. Jan. 18, 2018) ("A party cannot amend a complaint by attaching documents to a response to a motion to dismiss, or by asserting new facts or theories in the

response."). *Two*, and in any event, this statement only tells us the "protected conduct" on which Count II is based. But that "protected conduct" is a necessary element of *both* claims. *See Gogel*, 967 F.3d at 1134 (listing elements for discrete retaliation); *White*, 2022 WL 17364253, at *6 (listing elements for retaliatory hostile work environment). Despite Amaya's *post hoc* explanation, in short, we're not any closer to understanding what Count II is actually pleading.

"Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Anderson v. Dist. Bd. of Tr. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366–67 (11th Cir.1996). To avoid those outcomes, we'll give Amaya **one** more chance to replead her claims—this time without impermissibly incorporating multiple claims into each count. But Amaya will be given no more chances. If we dismiss her second amended complaint, we *will* dismiss it with prejudice.

\* \* \*

After careful review, we hereby **ORDER and ADJUDGE** as follows:

1. The Defendant's Motion to Dismiss [ECF No. 16] is **GRANTED**. The Amended Complaint [ECF No. 8] is **DISMISSED without prejudice**.
2. If the Plaintiff wants to file a second amended complaint, she must do so by **April 9, 2024**.

**DONE AND ORDERED** in the Southern District of Florida on March 26, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record