**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-cv-22838-ALTMAN/Reid

**MARIA AMAYA**,

    *Plaintiff*,

v.

**THOMAS J. VILSACK**, *Secretary,
United States Department of Agriculture*,

    *Defendant.*

_____/

**ORDER ON MOTION TO DISMISS**

The Defendant has filed a Motion to Dismiss the Plaintiff's Second Amended Complaint (the "MTD") [ECF No. 39]. Having carefully reviewed the briefing, the record, and the governing law, we now **GRANT in part** and **DENY in part** the Defendant's Motion to Dismiss.

**THE FACTS**[1]

Maria Amaya, our Plaintiff, worked for over twenty years at the U.S. Department of Agriculture ("USDA"). *See* Second Amended Complaint [ECF No. 37] ("SAC") ¶ 12. The USDA is "a federal government agency operating and doing business in the State of Florida" under the control of Thomas J. Vilsack, Secretary of the USDA. *Id.* ¶ 5. Since she began working at USDA, Amaya has been an "exemplary" employee who received "commendations, merit raises, and promotions to the position of GS00401-12, Supervisory, Plant Protection and Quarantine Officer." *Id.* ¶ 14.

---

[1] We accept the allegations of the Second Amended Complaint [ECF No. 37] as true for purposes of this Order. *See Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but 'legal conclusions without adequate factual support are entitled to no assumption of truth.'" (quoting *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (cleaned up))).

At USDA, Amaya's direct supervisor was Louis Volpe, the Department's South Florida Area Director. *Id.* ¶ 15. "Prior to being supervised by [ ] Volpe . . . Amaya ha[d] never received an Annual Performance Review rating her as below standard," *id.* ¶ 16, nor had she ever "been disciplined," *id.* ¶ 17. Despite this "exemplary record," Volpe "commenced an escalating, pervasive, and ongoing patten of known unwelcome and unlawful conduct, discrimination, and retaliation upon becoming her supervisor." *Id.* ¶ 23. Volpe's actions included "demanding multiple and ongoing meetings alone with [ ] Amaya in his office[,] . . . aggressively yell[ing] at her in such manner that provoked reasonable fear and discomfort[,] . . . [and] tell[ing] her that [Vilsack] would not discipline him for complaints by females and that other female staff had complained against him to no avail." *Id.* ¶ 24. Volpe would often "appear[ ] in [Amaya's] office without forewarning to repeat those same behaviors." *Id.* ¶ 25. Eventually, Amaya told Volpe she found this conduct "unwelcome" and requested "that she not be required to meet with him alone in the future[.]" *Id.* ¶ 26. But Volpe "denied her requests not to be required to meet with her alone" and "continued and escalated" this behavior. *Ibid.*

Amaya also complained of this conduct to Volpe's "supervisors." *Id.* ¶ 27. Richard Miranda, "Volpe's boss" and USDA's State Plant Health Director, *id.* ¶ 18, "made it known to [ ] Amaya that he communicated [her] complaints to [ ] Volpe," *id.* ¶ 28, but he "did not cause or make [ ] Volpe cease his complained of conduct," *id.* ¶ 31. Nor did Miranda's boss, Calvin Shuler. *See id.* ¶ 19 ("Miranda's boss was Mr. Calvin Shuler, District 5 Associate Executive Director."); *id.* ¶ 32 ("Shuler did not make [ ] Volpe cease his complained of conduct."). Instead, they rejected Amaya's request that "Volpe be removed from supervising her[.]" *Id.* ¶ 31.

So too did Amaya "file[ ] written complaints against [ ] Volpe with [USDA's] own labor and EEO divisions to no avail." *Id.* ¶ 29. But despite being "on notice" of Volpe's unwelcome behavior against Amaya, *id.* ¶ 64, Vilsack never required Volpe "to cease his unlawful activity against [ ] Amaya[,] nor attempt[ed] to remediate [this] unlawful activity," *id.* ¶ 62.

2

In the Spring of 2022, Volpe—who knew about Amaya's complaints, *see id.* ¶ 30 ("At all times material hereto, [ ] Volpe was on notice of [ ] Amaya's complaints of his prohibited activity against him.")—suspended Amaya without pay, *see id.* ¶ 83 ("Volpe's substantial discipline and negative performance reviews adversely altered the terms of Plaintiff's employment and wiped out her stellar employment history, ranging from multiple written reprimands to suspension without pay, in April 2022 and June 2022."). Amaya had "never been suspended in her almost forty-year history of working for the federal government prior to [ ] Volpe becoming her supervisor." *Id.* ¶ 34.

"After over a year of [ ] Amaya repeatedly complaining . . . about . . . Volpe's prohibited activity[,] . . . and only after [she] subsequently filed a formal EEOC charge against [Vilsack] with repeat[ed] requests for [ ] Volpe to be removed from supervising [ ] Amaya, did [Vilsack] finally . . . remove [ ] Volpe from supervising [ ] Amaya" in April 2023. *Id.* ¶ 37. On July 28, 2023, soon after the EEOC issued its "Final Agency Decision" on Amaya's administrative complaint, *see ibid.* ("[O]n or about April, 2023[,] [EEOC] issu[ed] its Final Agency Decision wherein the legal next step allowed her to file suit against Defendant in federal court."), Amaya brought this suit against Vilsack under Title VII of the Civil Rights Act of 1964, *see* Complaint [ECF No. 1]; *see also* First Amended Complaint [ECF No. 8].

On March 26, 2024, we dismissed Amaya's First Amended Complaint as an impermissible shotgun pleading. *See Amaya v. Vilsack*, 2024 WL 1285162 (S.D. Fla. Mar. 26, 2024) (Altman, J.). And, while we gave Amaya "one more chance to replead her claims—this time without impermissibly incorporating multiple claims into each count"—we warned her that, if "we dismiss her second amended complaint, we will dismiss it with prejudice." *Id.* at *4. Amaya filed her Second Amended Complaint on April 16, 2024, alleging three counts under Title VII: "discrimination based on sex," SAC ¶¶ 40–69 (Count I); "retaliation for reporting discrimination based on sex," *id.* ¶¶ 70–99 (Count II); and "hostile work environment based on sex," *id.* ¶¶ 100–13 (Count III). Vilsack has since moved

3

to dismiss all counts. *See generally* MTD. That Motion is now ripe for resolution. *See* Defendant's Reply [ECF No. 45].

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

## ANALYSIS

### I.     Count I: Sex Discrimination

In Count I, Amaya brings a claim for "discrimination based on her sex," in violation of the Civil Rights Act of 1964. SAC ¶ 53. As both parties acknowledge, a plaintiff needn't establish her *prima facie* case for discrimination to plead a substantive-discrimination claim under Title VII. *See* MTD at 5 ("'[T]he Eleventh Circuit has recently clarified that federal-sector employees are 'not bound by the *McDonnell Douglas* burden-shifting framework[.]'" (quoting *Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th

4

1343, 1353 (11th Cir. 2024))); Plaintiff's Response ("Pl.'s Resp.") [ECF No. 44] at 5 ("As Defendant acknowledges, at this stage, federal courts no longer require the Plaintiff to satisfy the *McDonnell Douglas* framework[.]" (first citing *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019); and then citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973))). Instead, to survive a motion to dismiss, a plaintiff "need only provide enough factual matter (taken as true) to suggest intentional . . . discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). In other words, Amaya must plausibly allege that (1) she "suffered an adverse employment action" and (2) the action can be attributed to "intentional [sex] discrimination." *Ibid.*

Amaya's done that here. *First*, Amaya established that she suffered an adverse employment action by pleading that, "*just as with Ms. Amaya* during April 2022, Mr. Volpe suspended-without-pay female supervisor V.H." SAC ¶ 34 (emphasis added); *see also id.* ¶ 40 (incorporating that allegation into Count I). Because we must "draw all reasonable inferences in the plaintiff's favor," *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010), we'll take this statement to mean that Amaya (like V.H.) was *also* suspended without pay, *see Just As*, MERRIAM-WEBSTER DICTIONARY, https://shorturl.at/NhsWC (defining this idiomatic phrase to mean "to an equal degree as" or "in the same way as"). And suspension without pay constitutes an adverse employment action under Title VII. *See Davis v. Leg. Servs. Ala., Inc.*, 19 F.4th 1261, 1266 (11th Cir. 2021) ("[A]dverse employment actions include 'tangible employment actions,' which are those actions 'that affect continued employment or pay—things like terminations, demotions, suspensions without pay[.]'" (quoting *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020))).

*Second*, Amaya plausibly alleges that she was suspended because of her sex. As she explains, "Volpe's actions included demanding multiple and ongoing meetings alone . . . in his office . . . to threaten her employment[,] . . . aggressively yell[ing] at her[,] . . . [and telling her] that Defendant would not discipline him for complaints *by females*[.]" SAC ¶ 24 (emphasis added). Such "[sex]-biased

5

comments can be circumstantial evidence to support an inference of discrimination[.]" *Jenkins v. Nell*, 26 F.4th 1243, 1251 (11th Cir. 2022). And, while Amaya wasn't required "to allege facts showing that [a comparator] was similarly situated [to her] in all material respects," *Horace v. ARIA*, 2024 WL 1174298, at *6 (11th Cir. Mar. 19, 2024), her allegation that Volpe "did not commit this unlawful conduct with the male employees," SAC ¶ 54; *see also id.* ¶ 45 ("[A]lthough repeatedly refusing to remove Mr. Volpe from supervising . . . Ms. Amaya when she repeatedly complained of Mr. Volpe's conduct and requested he be removed from supervising her, Mr. Volpe expeditiously removed a male employee under Ms. Amaya's direct supervision on or about July[ ] 2022[.]"), further bolsters the plausibility of her claim, *see Horace*, 2024 WL 1174298, at *6 ("Even if the factual allegations in [the plaintiff's] amended complaint do not allege 'a classic *McDonnell Douglas* prima facie case' of . . . discrimination, they are adequate to 'plausibly suggest that [the plaintiff] suffered an adverse employment action due to intentional . . . discrimination.'" (quoting *Surtain*, 789 F.3d at 1246)). Vilsack is therefore wrong to claim that Amaya "fails to connect her protected status with the Director's alleged adverse actions other than by conclusion[.]" MTD at 6. We thus **DENY** the Motion to Dismiss Count I.

## II. Count II: Retaliation

Count II asserts a viable claim of unlawful retaliation. To state a plausible retaliation claim, "a plaintiff must allege [that:] (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse action." *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (citing *Pipkins v. City of Temple Terrace,* 267 F.3d 1197, 1201 (11th Cir. 2001)). That's what Amaya has done here.

As to the first element, Amaya alleged that she participated in protected activity under Title VII when she "repeatedly and ongoingly *complained* of her direct male supervisor [ ] Volpe's repeat and

6

ongoing sexual discrimination against her directly to [ ] Volpe and his supervisors[.]" SAC ¶ 71 (emphasis added); *see also id.* ¶ 60 ("Ms. Amaya also reported Mr. Volpe's prohibited activity of discrimination based on sex to Mr. Volpe's boss [and] to Defendant's Labor Management Employee Relations Board, to no avail."). An employee's decision to report sex discrimination is protected activity under Title VII. *See McArthur v. Northstar Funeral Servs. of Fla., LLC*, 2011 WL 1549007, at *3 (S.D. Fla. Apr. 22, 2011) (Huck, J.) ("[I]t is well-settled that reporting discriminatory conduct to one's employer constitutes a protected activity under Title VII[.]").

With respect to the second element—as we've said—Amaya properly alleged that she was subjected to an adverse employment action when she was "issued a wrongful fourteen-day suspension," SAC ¶ 75, which was "without pay," *id.* ¶ 34 (cleaned up); *see also Davis*, 19 F.4th at 1266 ("[A]dverse employment actions include . . . suspensions without pay[.]" (cleaned up)).

Amaya's allegations also allow us to plausibly infer a causal connection between her report of discrimination and her suspension—*i.e.*, the third element of a retaliation claim. *See Norris v. Honeywell Int'l, Inc.*, 2023 WL 6256183, at *18 (M.D. Fla. Sept. 26, 2023) (Honeywell, J.) ("Title VII retaliation requires a plaintiff to plausibly allege . . . there was a causal link between the protected expression and the adverse action."). A plaintiff can establish causation by, for instance, "showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). To show temporal proximity, the complaint should explain *when* the protected activity (and the alleged retaliation) occurred. *See O'Hara v. Univ. of W. Fla.*, 750 F. Supp. 2d 1287, 1312 (N.D. Fla. 2010) (Smoak, J.) ("[T]he fact that [Plaintiff] has not provided any information regarding the dates of her complaints is potentially fatal to her retaliation claim.").

As Vilsack correctly points out, Amaya "offers no facts regarding the timing of [her] complaints, or of any other potentially protected activity." MTD at 8 (cleaned up). While the Second

7

Amended Complaint says that, "after [Amaya] reported and complained of," SAC ¶ 75, Volpe's behavior, Volpe, "during or around April 2022[,] . . . [issued] Amaya a wrongful fourteen-day suspension in retaliation for her complaining about his sexual discrimination," *id.* ¶ 74, it doesn't tell us *when* Amaya reported the discrimination in the first instance, *see generally* SAC. We therefore cannot infer causation from a "close temporal proximity between the protected activity and the employer's adverse action." *Boyland v. Corrs. Corp. of Am.*, 390 F. App'x 973, 974 (11th Cir. 2010) (citing *Thomas*, 506 F.3d at 1364).

Still, Amaya "has alleged *other facts*[ ] that[,] if true, allow for the plausible inference that she was terminated in retaliation" for her protected activity. *Jackson v. Brennan*, 2018 WL 11506062, at *1 (N.D. Fla. June 26, 2018) (Walker, J.) (emphasis added & cleaned up); *see also Matamoros v. Broward Sheriff's Off.*, 2019 WL 4731931, at *4 (S.D. Fla. June 8, 2019) (Moore, C.J.) ("[I]t would be premature for the Court to dismiss Plaintiff's retaliation claim on this ground without the Parties having the benefit of discovery, as lack of temporal proximity only defeats a retaliation claim 'in the absence of other evidence tending to show causation.'" (quoting *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004))), *aff'd* 2 F.4th 1329 (11th Cir. 2021). For example, Amaya avers that Volpe "issued [the] wrongful suspension as his first level of discipline." SAC ¶ 76; *see also id.* ¶ 77 ("[H]is first discipline of her for the alleged and false incidences occurred in the suspension he issued of Ms. Amaya only after she had repeatedly complained of his ongoing sexual discrimination against Ms. Amaya."). The fact that this "adverse action was the first opportunity for the employer to retaliate" is sufficient "additional evidence to demonstrate a causal connection" at the pleading stage. *Ward v. United Parcel Serv.*, 580 F. App'x 735, 739 (11th Cir. 2014) (first citing *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997); and then citing *Dale v. Wynne*, 497 F. Supp. 2d 1337, 1346 (M.D. Ala. 2007)). So too may the "alleged fabrication of [ ] charges against her . . . be considered as *other* evidence of retaliation." *Ritchie v. Mitchell*, 2015 WL 3616076, at *6 (N.D. Ala. June 9, 2015); *see also* SAC ¶ 77 ("[Volpe's]

8

suspension of Ms. Amaya was based on a smorgasbord of alleged complaints he manufactured at the time of the suspension[.]").

Accepting the Complaint's factual allegations as true (as we must at this stage of the case), we think Amaya has plausibly alleged that she was retaliated against *because* she engaged in a statutorily protected activity—*viz.*, complaining to Volpe's supervisors about sex discrimination. As such, "it would be premature" for us to dismiss this claim "without the Parties having the benefit of discovery," *Matamoros*, 2019 WL 4731931, at *4, which "might unearth evidence of retaliation such that at summary judgment or trial, the plaintiff will not have to rely heavily on the temporal proximity between protected conduct and adverse actions to prove her case," *El-Saba v. Univ. of S. Ala.*, 2015 WL 5849747, at *15 (S.D. Ala. Sept. 22, 2015) (citing *Garayalde–Rijos v. Municipality of Carolina*, 747 F.3d 15, 25 n.8 (1st Cir. 2014)), *report and recommendation adopted as amended*, 2015 WL 5882977 (S.D. Ala. Oct. 7, 2015). We therefore **DENY** the Motion to Dismiss Count II.

### III. Count III: Hostile Work Environment

Count III alleges that Amaya "was subjected to and required to endure a pervasively hostile work environment created by her employer because of her sex as terms and conditions of her employment." SAC ¶ 101. To state a hostile-work-environment claim based on sex, a plaintiff must allege:

> (1) [that she] belongs to a protected group; (2) that [she] has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Palmer v. McDonald*, 624 F. App'x 699, 703 (11th Cir. 2015) (citing *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248–49 (11th Cir. 2014)).

9

Vilsack doesn't argue that Amaya has failed to sufficiently allege the first, second, third, and fifth elements of a hostile-work-environment claim. *See* MTD at 9–12 (focusing on whether the alleged conduct was sufficiently "severe or pervasive"). He's thus forfeited (at least for now) any argument he might have advanced as to those elements. *See, e.g.*, *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court sua sponte [only] in extraordinary circumstances."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived.").

In any event, Amaya has plausibly established each of those elements. *One*, she alleges that she "is a member of a protected class of female citizens." SAC ¶ 101; *see also Tipp v. AmSouth Bank*, 76 F. Supp. 2d 1315, 1331–32 (S.D. Ala. 1998) ("Clearly, plaintiff belongs to a protected group as she is a woman."). *Two*, she properly claims that she was subjected to unwelcome harassment. *See Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir. 1982) (to rise to the level of harassment, the conduct "must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive"). As Amaya explains:

> Each time that she complained, Mr. Volpe intensified the frequency of [ ] his arbitrary meetings with her alone, and exacerbated the intensity in depth of those unwarranted meetings, causing her workdays multiple times per month to be these random types of unjustified nerve-wracking meetings with Mr. Volpe, of which Ms. Amaya had no control to cease from occurring because Mr. Volpe was her direct supervisor who refused to cease his harassment, and his supervisors to whom she complained also refused to cease his harassment[.]

SAC ¶ 103. That Amaya complained about these meetings—which persisted despite her complaints—suggests that she was an unwilling participant in the harassment. *See Balletti v. Sun-Sentinel Co.*, 909 F. Supp. 1539, 1547 (S.D. Fla. 1995) (Seltzer, Mag. J.) ("Where a plaintiff's action in the workplace shows that she was a willing and frequent participant in the conduct at issue, courts are less likely to find that

10

the conduct was 'unwelcome.'" (quoting *Henson*, 682 F.2d at 903)). And, by claiming that "Mr. Volpe and his supervisors refused to cease his almost daily harassment of Ms. Amaya down to the [ ]*nth* degree despite her multiple complaints to Mr. Volpe and his supervisors about the hostile work environment he'd created through these unjustified and without cause meetings, discipline, [and] targeting," SAC ¶ 110, Amaya has, "by her conduct[,] indicated that the [complained-of behavior was] unwelcome," *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986).

*Three*, we can plausibly infer that this harassment was *based on* Amaya being a woman because Volpe would "tell [Amaya] that [his supervisors] would not discipline him for complaints by females[.]" SAC ¶ 24. This sex-based animus is corroborated by her separate allegation that "Mr. Volpe did not treat his male employees in the same [way as] Ms. Amaya." *Id.* ¶ 112. Amaya has thus properly pled that her sex was the cause of her harassment. *See Henson*, 682 F.2d at 904 ("[The third element requires the plaintiff to] show that but for the fact of [her sex], [she] would not have been the object of harassment."); *see also Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1014 (11th Cir. 2023) ("This does not require [the plaintiff] to prove that [sex] was the *exclusive* cause of the [harassment], but it does require [her] to prove that *but for* [her] [sex], the harassment would not have occurred." (emphasis added)).

Finally, on element *five*, Amaya has sufficiently alleged that Vilsack is liable for Volpe's conduct under a theory of vicarious liability. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002) ("An employer 'is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.'" (cleaned up)); *cf.* SAC ¶ 5 ("[The Defendant is the] Secretary [of] the United States Department of Agriculture . . . [and] all USDA employees stated herein were employees working within the course and scope of their employment at all times hereto."); *id.* ¶¶ 13–15 ("[Volpe was] "South Florida Area Director . . . [of USDA's] Miami office of Animal and Plant Inspection Service[.]").

11

The only outstanding issue, then, is whether Amaya has plausibly alleged the fourth element of her claim—*viz.*, that the harassment she faced was "sufficiently severe or pervasive as to alter the terms and conditions of [her] employment." *Ali v. Geren*, 2009 WL 10664968, at *2 (N.D. Ga. May 22, 2009) (quoting *Mendoza v. Borden Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc)). To satisfy this element, two things must be true. *One*, the plaintiff must "*subjectively* perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment[.]" *Palmer*, 624 F. App'x at 703 (emphasis added). *Two*, she must show "that the work environment was . . . *objectively* hostile . . . from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Ibid.* (emphasis added) (citing *Adams*, 754 F.3d at 1249).

We're satisfied that Amaya plausibly *perceived* Volpe's conduct as sufficiently severe and pervasive. Volpe's actions, after all, made her feel that "there was no safe haven [ ] for her against the harassment," SAC ¶ 107, and, in her view, "interfer[ed] with her work environment and ability to perform her work," *ibid.*; *see also Bishop v. Truist Bank, Inc.*, No. 23-cv-4690, 2024 U.S. Dist. LEXIS 100775, at *9 (N.D. Ga. June 6, 2024) (holding that a plaintiff who alleged that the defendant's comments made her feel "very uncomfortable, insecure and ashamed of [her] body" satisfied the subjective component of this element).

Amaya, however, fails to plead sufficient facts to establish *objective* severity. In determining whether the harassment was *objectively* severe, courts consider (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating (or whether it constituted a mere offensive utterance); and (4) whether the conduct unreasonably interferes with the employee's job performance. *See Mendoza*, 195 F.3d at 1246. "No single factor is controlling, and a court must consider the totality of the circumstances." *United States v. Bartow County*, 2023 WL 2344209, at *6 (N.D. Ga. Mar. 3, 2023) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Even accepting Amaya's allegations as true—as we must, *see Hollard v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022) ("[A] court must accept as true all of the [factual] allegations contained in a complaint[.]" (cleaned up))—Volpe's actions are insufficiently severe as a matter of law to create a hostile work environment.

Amaya's hostile-work-environment claim is premised on her allegation that, "repeatedly and continuously[,] despite her complaints[,] . . . Volpe demanded her presence in his office alone and without cause for no other purpose than to yell at . . . [her and] unjustifiably threaten [her] employment." SAC ¶ 102. According to Amaya, "multiple times per month [she had] these random types of unjustified nerve-racking meetings with Mr. Volpe," and "[a]lmost daily, [she] became reasonably afraid of being disciplined and/or terminated by Mr. Volpe without cause due to his continuing and escalating[,] harassing[,] unjustifiable threats[,] and yelling against her[.]" *Id.* ¶ 104. And "[e]ach time she complained[,] [Volpe] intensified the [frequency of those] meetings . . . and exacerbated the[ir] intensity [and] depth[.]" *Id.* ¶ 103.

As to frequency, Vople's "almost daily harassment," SAC ¶ 110, weighs in Amaya's favor, *see Freyas-Torres v. City of Sanford*, 270 F. App'x 885, 890 (11th Cir. 2008) ("The frequency of the conduct weighs in [the plaintiff's] favor[, since the plaintiff] was subjected to at least daily harassment[.]"). Even so, Volpe's underlying conduct isn't especially severe. Title VII does not promulgate a "general civility code" for workplace interactions. *Oncale v. Sundower Offshore Serv.,* 523 U.S. 75, 81 (1998). Accordingly, the "bar for a hostile work environment claim is especially high, and will not be met unless the alleged conduct is extreme." *Booth v. Pasco County*, 829 F. Supp. 2d 1180, 1189 n.5 (M.D. Fla. 2011) (Moody, J.). And the alleged conduct in our case—Volpe's "threats and yelling," SAC ¶ 104—is just not the type of extreme behavior Title VII prohibits. *See, e.g.*, *Elite Amenities, Inc. v. Julington Creek Plantation Cmty. Dev. Dist.*, 784 F. App'x 750, 753 (11th Cir. 2019) (finding that "a board member's uninvited, unpleasant office visits; physical engagement with the employee's work papers; and harsh emails are

nothing more than ordinary tribulations of the workplace"); *Edmund v. Univ. of Miami*, 441 F. App'x 721, 725 (11th Cir. 2011) (plaintiff's allegation of supervisor "yelling at him in the presence of patients, family members and co-workers . . . certainly shows that [they] had a difficult relationship, but does not indicate that [the plaintiff] regularly suffered from severe or pervasive hostile conduct" (cleaned up)); *Herawi v. State of Ala. Dep't of Forensic Scis.*, 311 F. Supp. 2d 1335, 1351 (M.D. Ala. 2004) (finding that the plaintiff's allegations that her supervisor "yelled at her on a number of occasions" were not "sufficiently hostile or abusive and pervasive to establish a Title VII hostile environment claim"); *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 630 (8th Cir. 2005) ("[T]wo years of frequent yelling . . . [wasn't] so severe or pervasive as to alter a term, condition, or privilege of [the plaintiff's] employment."); *Griswold v. Fresenius USA, Inc.*, 978 F. Supp. 718, 732 (N.D. Ohio 1997) (finding no hostile work environment where a male plaintiff alleged that his supervisor yelled and swore at him "in the workplace, [even though] he did not yell or swear at female employees"); *Pierri v. Cingular Wireless, LLC*, 397 F. Supp. 2d 1364, 1380 (N.D. Ga. 2005) ("Job performance criticism from a supervisor or manager is a common vicissitude of life in the working world, even if harsh or unjustified.").[2]

---

[2] For what it's worth, courts in our Circuit routinely dismiss cases involving *far more* egregious employer misconduct for failure to meet this prong of the hostile-work-environment test. *See, e.g.*, *Godoy v. Habersham County*, 211 F. App'x 850, 853–54 (11th Cir. 2006) (finding that a plaintiff who alleged that he was "battered by his supervisor, who told him to '[g]o back to his boat and sail to South America[ ] where he belongs,'" and who claimed that "he was subject to racial slurs almost every shift and received a threatening phone call," failed to meet the "extreme level of discriminatory conduct required by Title VII"); *Lu Silverio v. Just Brands, LLC*, 2023 WL 6389529, at *7 (S.D. Fla. Oct. 2, 2023) (Scola, J.) (finding that the plaintiff, who "was forced to work extremely long work hours compared to her non-Chinese/non-Asian co-workers, intimidated and threatened when she complained about the treatment she was receiving, removed from her workspace without prior notice, and called discriminatory remarks," did not allege conduct severe or pervasive enough to state a claim); *McCurdy v. State of Ala. Disability Determination Serv.*, 2015 WL 5737103, at *14–15 (M.D. Ala. Sept. 30, 2015) (plaintiff failed to state a claim for hostile work environment, even though she was called a "dumb nigger" by her supervisor on "several occasions").

Amaya also doesn't allege that she was *physically* threatened in any way. *See generally* SAC; *see also Thomaston ex rel. M.T. v. Baldwin Cnty. Bd. of Educ.*, 2019 WL 3069863, at *6 (S.D. Ala. June 25, 2019) (refusing to find objective severity where there were no "allegations of [physical] threats, suggestive gestures, offensive touching, sexual propositions, physical assault, or sexually-charged contact"), *report and recommendation adopted*, 2019 WL 3069399 (S.D. Ala. July 12, 2019). And even when the Second Amendment Complaint tries to track the severity factors, its allegations amount to nothing more than "a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. That "will not do." *Ibid.*

For example, Amaya says that she "suffered . . . embarrassment and humiliation" as a result of the "Defendant's hostile work environment[.]" SAC ¶ 113. But, without more, we have no basis from which to infer that Volpe's scoldings—an "ordinary interaction[ ] of the workplace," *Palmer*, 624 F. App'x at 704—were *objectively* humiliating, *see ibid.* ("As for his hostile work environment claims based on disability and retaliation, he mostly described ordinary interactions of the workplace—e.g., that his supervisor hastily gave verbal instructions, yelled at him, spoke to him in a loud voice, implied he was incompetent, scolded him, laughed out loud by his cubicle, and did not help him first thing in the morning. We cannot say this conduct was . . . humiliating[.]"); *see also Booth*, 829 F. Supp. 2d at 1189–90 (allegations that employer "often yelled at [the plaintiff] are merely 'generalized complaints of constant needling and criticism' that are insufficient as a matter of law to create a hostile work environment." (quoting *Blackburn v. Shelby County*, 770 F. Supp. 2d 896, 929 (W.D. Tenn. 2011))).

Similarly, Amaya claims that "Volpe's multiple random unwarranted meetings demanded in his office alone interrupted [the] performance of her assigned work." SAC ¶ 106. But we cannot say that having to attend meetings "multiple times per month" with one's supervisor at work *unreasonably* interferes with one's job performance. *Id.* ¶ 104; *see also Moore v. Shands Jacksonville Med. Ctr., Inc.*, 2013 WL 11327134, at *33 (M.D. Fla. Oct. 18, 2013) (Howard, J.) ("[B]eing 'forced' to attend meetings . . .

do[es] not [ ] suggest a workplace permeated with retaliatory 'intimidation, ridicule, and insult.'" (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–16 (2002))); *see also Hammett v. S.C. Dep't of Health & Env't Control*, 2013 WL 1316440, at *5 (D.S.C. Jan. 25, 2013) ("Plaintiff's allegation that she was forced to attend meetings with other employees without a witness or representative is insufficient to show that the alleged harassment was so severe and pervasive to constitute grounds for a hostile work environment claim."), *report and recommendation adopted*, 2013 WL 1316434 (D.S.C. Mar. 28, 2013); *White v. Marquis Cos. I*, 2020 WL 5949244, at *15–16 (D. Or. June 30, 2020) ("[M]eetings with supervisors are a normal part of the workplace environment . . . . Moreover, even if the 'air' of the meeting was not to plaintiff's liking, 'many bosses are harsh, unjust, and rude[.]'" (quoting *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 107 (D.D.C. 2005))), *report and recommendation adopted*, 2020 WL 5947885 (D. Or. Oct. 7, 2020).

So, while Volpe's conduct may have been frequent, *see* SAC ¶ 110 ("Mr. Volpe and his supervisors refused to cease his almost daily harassment of Ms. Amaya[.]"); *but see id.* ¶ 49 ("[M]ultiple times *per month* male supervisor Mr. Volpe would single out and target female Ms. Amaya[.]" (emphasis added)), "the frequency of it does not compensate for the absence of the other factors," *Mendoza*, 195 F.3d at 1248. Although Amaya and Volpe may have "had a difficult working relationship[,] . . . this is insufficient to state a claim for a hostile work environment." *Booth*, 829 F. Supp. 2d at 1190. We therefore **GRANT** the Defendant's Motion to Dismiss Count III.

\* \* \*

Where, as here, a "plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court," we aren't "required to grant [that] plaintiff leave to amend h[er] complaint sua sponte[.]" *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002); *see also Fernau v. Enchante Beauty Prods., Inc.*, 847 F. App'x 612, 623 (11th Cir. 2021) (committing this decision to the "discretion" of the district court). And given that Amaya's

"exhaustive" account of the relevant facts, Pl.'s Resp. at 15, was nonetheless "insufficient as a matter of law to sustain a hostile-environment claim," *Mendoza*, 195 F.3d at 1252, we conclude that any further amendment would be futile, *see Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004) (noting that "amendment would be futile" if "the underlying facts or circumstances relied upon by a plaintiff [cannot] be a proper subject of relief" (cleaned up)). Unlike with Amaya's First Amended Complaint, which we dismissed as a shotgun pleading, *see Amaya*, 2024 WL 1285162, at *4, the problem here is not merely one of form, curable by "a more carefully drafted complaint," *Omanwa v. Catoosa County*, 711 F. App'x 959, 962 (11th Cir. 2017); *see also Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) ("What matters is function, not form[.]"). Amaya's Second Amended Complaint alleged the "intricate details of disparate treatment and discrimination based on sex" she experienced at the hands of Volpe. Pl.'s Resp. at 14. However "adeptly pleaded," though, *id.* at 15, Volpe's conduct simply isn't "extreme" enough to plausibly and objectively create a hostile work environment, *Booth*, 829 F. Supp. 2d at 1189 n.5.

Because Amaya *doesn't* request leave to amend—and since any amendment to her already "exhaustive" Second Amended Complaint would be futile, *see* Pl.'s Resp. at 15—we'll allow Amaya to proceed only on Counts I and II.

## Conclusion

After careful review, therefore, we hereby **ORDER and ADJUDGE** as follows:

1. The Defendant's Motion to Dismiss the Plaintiff's Second Amended Complaint [ECF No. 39] is:
   a. **DENIED in part** as to Counts I & II; and
   b. **GRANTED in part** as to Count III.
2. Count III of the Second Amended Complaint [ECF No. 37] is **DISMISSED with prejudice**.

3. The parties shall file all pre-trial motions, including motions for summary judgment, *Daubert* motions, and motions for a bench trial, by **July 29, 2024**.

**DONE AND ORDERED** in the Southern District of Florida on July 22, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record