UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-22838-ALTMAN/Reid

MARIA AMAYA,

　　　　*Plaintiff,*

*v.*

THOMAS J. VILSACK, *Secretary,*
*United States Department of Agriculture,*

　　　　*Defendant.*

_____/

## ORDER

　　　　The Defendant has filed a Motion for Summary Judgment ("Def.'s MSJ") [ECF No. 49]. After careful review of the briefing, the record, and the governing law, we hereby **ORDER and ADJUDGE** that the Defendant's Motion for Summary Judgment is **GRANTED**.

## THE FACTS[1]

　　　　Maria Amaya, our Plaintiff, worked for the United States Department of Agriculture ("USDA") "for over twenty years," Plaintiff's Response Statement of Facts ("Pl.'s Resp. SOF") [ECF

---

[1] On a motion for summary judgment, we describe the facts "in the light most favorable to [the non-moving party]." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 n.2 (11th Cir. 2019); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]."). We accept these facts for summary-judgment purposes only and recognize that "[t]hey may not be the actual facts that could be established through live testimony at trial." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268, at *1 n.1 (N.D. Ala. Nov. 16, 2016); *see also Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion may not be the actual facts. They are, however, the facts for present purposes[.]" (cleaned up)). In considering Vilsack's motion, then, we describe the facts in the light most favorable to the Plaintiff and rely on Vilsacks's Statement of Facts [ECF No. 50] only where the Plaintiff has failed to genuinely dispute a proposition Vilsack has asserted there, *see* S.D. FLA. L.R. 56.1(b) ("All material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement provided that the Court finds that the movant's statement is supported by evidence in the record."); *see also Atl. Cas. Ins. Co. v. Ca'D'Oro, LLC*, 362 F. Supp. 3d 1268, 1272 (S.D. Fla. 2018)

No. 55] ¶ 27 (first citing Second Amended Complaint ("SAC") [ECF No. 37] ¶¶ 12, 14, 16–17; and then citing Deposition of Louis Volpe Day 2 ("2d Volpe Dep.") [ECF No. 55-2] at 41:22–42:2)—most recently as a Supervisory Plant Protection and Quarantine Officer at USDA's "inspection station in Miami," Defendant's Statement of Facts ("Def.'s SOF") [ECF No. 50] ¶ 1 (citing Deposition of Maria Amaya ("Amaya Dep.") [ECF No. 50-1] at 11:11–22). Beginning in 2017, Amaya's "first-line supervisor" at USDA "was South Florida Area Director Louis Volpe," to whom she "reported directly[.]" Def.'s SOF ¶ 2 (citing Amaya Dep. at 10:8–14); *see also* Pl.'s Resp. SOF ¶ 3 ("Undisputed."); 2d Volpe Dep. at 44:10–12 ("Q. And when did you become the direct supervisor of Ms. Amaya and Ms. Harper? A. I don't know the exact date but July '17 maybe.").

The workplace relationship between Amaya and Volpe was tumultuous from the start. On August 31, 2017, Amaya met with Volpe to raise some concerns she had about the workplace environment. *See* 2d Volpe Dep. at 45:2–10 ("Q. . . . [S]he's thanking you for meeting with her on Thursday, August 31st, 2017, regarding two rather complex issues that she wanted to discuss? A. Yes."). Specifically, Amaya complained to Volpe about how she was "taken aback by" his request that she should "go around and tell people that Tony Knapick"—another USDA employee who reported to Volpe—"was the highest ranking in the past selection process." *Id.* at 46:3–47:16.

The record contains little information about the goings-on at USDA over the next several years. But, on April 8, 2021, Amaya once again complained of being subjected to discrimination and harassment by Volpe—this time to Volpe's supervisor, Richard Miranda. *See* 2d Volpe Dep. at 54:18–55:2 ("Q. . . . Mr. Miranda testified that Ms. Amaya sent him two emails, sent him emails, I'm sorry, on two separate occasions, April 8, 2021, and February [2], 2022, complaining about harassment and

---

(Altonaga, J.) ("At summary judgment . . . [c]ourts must consider the entire record and not just the evidence singled out by the parties." (citing *Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1570 (11th Cir. 1987))).

discrimination by you. It says by Director Lou Volpe, her direct supervisor, correct? A. Correct."). She complained to Miranda again on February 2, 2022. *See ibid.*

On April 12, 2022, Volpe issued Amaya a Notice of Proposed Suspension based on multiple alleged instances of Amaya's "failure to follow instruction" and "conduct unbecoming [of] a federal employee[.]" Notice of Proposed Suspension [ECF No. 50-2] at 1. The Notice alleged that Amaya had missed several meetings Volpe required her to attend, that she "recorded [a] conversation between [the two] without [Volpe's] knowledge or consent," and that she "became aggressive and began a tirade" in the workplace. *See id.* at 2–3. Volpe also referenced complaints about Amaya's conduct by his assistant, Rose Lopez. *See* 2d Volpe Dep. at 19:11–14 ("Q. And so the complaint to you for Specification 1 under charge one originated from Ms. Lopez to you, correct? A. Yes."). Amaya "dispute[s] that the alleged acts occurred." Pl.'s Resp. SOF ¶ 6. She also expressed that she wanted "the door open during those meetings [and that] she didn't want to come to [Volpe's] office" to have the meetings in person. 2d Volpe Dep. at 35:19–23. Volpe, however, maintained that requiring Amaya to attend in-person meetings with him "to discuss work related activity" was "well within [his] rights as a supervisor." *Id.* at 36:3–6.

 For these alleged violations, Volpe proposed that Amaya be suspended "without pay" for "fourteen [ ] days." *See* Notice of Proposed Suspension at 1. That recommendation would ultimately need to be reviewed and adopted by Miranda before taking effect. *See id.* at 5 ("This is only a proposal. . . . Your written reply should be addressed to the Deciding Official, Acting Associate Executive Director Richard Miranda[.]"). Miranda issued his final decision on June 21, 2022, finding that Volpe had proven by "a preponderance of the evidence" that Amaya "refus[ed] to report to a meeting as instructed" and "display[ed] discourteous conduct or disrespect to a coworker[.]" Def.'s SOF ¶¶ 5–6 (citing Decision on Proposed Suspension [ECF No. 50-3] at 1–3); *see also* Pl.'s Resp. SOF ¶ 6 ("Undisputed that Miranda made that decision."). Even so, Miranda "did not sustain" Amaya's

proposed suspension and instead "determined that [her] misconduct merited a letter of reprimand." Def.'s SOF ¶ 7 (citing Decision on Proposed Suspension at 1); *see also* Pl.'s Resp. SOF ¶ 7 ("Undisputed that Miranda reduced the discipline of suspension to a reprimand."). A letter of reprimand "is not made part of [a] USDA employee's permanent record but is instead filed in their electronic official personnel folder [ ] for a period of up to two years." Def.'s SOF ¶ 8 (citing Decision on Proposed Suspension at 1); *see also* Pl.'s Resp. SOF ¶ 8 ("Undisputed.").

On July 5, 2022, Amaya contacted the Animal and Plant Health Inspection Service's ("APHIS") "office of civil rights, diversity and exclusion [sic]" to (once again) complain about Volpe's discriminatory behavior. 2d Volpe Dep. at 62:20–64:13. Amaya asked APHIS to allow the "[r]emoval of Louis Volpe and Rose Lopez from supervisory and managerial authority over [her.]" *Id.* at 67:16–20. But Volpe wasn't removed as Amaya's supervisor. *See* Deposition of Louis Volpe Day 1 ("1st Volpe Dep.") [ECF No. 55-2] at 42:20–21 ("Q. And were you immediately removed as her supervisor? A. No."). Instead, APHIS responded to Amaya by reporting that "Volpe had removed all [of Amaya's] supervisor duties and responsibilities [over Edgar] Ramos," *id.* at 52:17–19—"a plant health safeguarding specialist" under Amaya's direct supervision who "fil[ed] a formal grievance against [ ] Amaya for discrimination," *id.* at 48:14–49:11—and informed Amaya that, "going forward[,] [she would] need to submit [her] complaints concerning Mr. Ramos' behavior to Mr. Volpe for him to address," *id.* at 65:11–17.

Volpe conducted Amaya's annual performance review on October 17, 2022, rating her as "'fully successful' on every critical element" of the assessment. Def.'s SOF ¶¶ 10–11; *see also* Pl.'s Resp. SOF ¶¶ 10–11 ("Undisputed."). "'Fully Successful' is the highest rating an employee could receive in a performance appraisal." Def.'s SOF ¶ 12 (citing Amaya Dep. at 35:4–10); *see also* Pl.'s Resp. SOF ¶ 12 ("Undisputed."). Because of Amaya's successful performance review, her next step increase on the federal government's General Schedule pay system "occurred timely and in conformity with the

standard progression for federal employees[.]" Def.'s Resp. SOF ¶ 16 (citing Amaya Dep. at 37:10–38:2); *see also* Pl.'s Resp. SOF ¶ 16 ("Undisputed."). Volpe left USDA's Miami office in April 2023. *See* 1st Volpe Dep. at 20:23–21:2 ("Q. Okay. So . . . are you saying April of 2023 is when you no longer were employed at the Miami office? A. Yes, ma'am.").

On July 28, 2023, Amaya sued Thomas J. Vilsack—the Secretary of the Department of Agriculture—alleging that her treatment at USDA violated Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act of 1992. *See generally* Complaint [ECF No. 1]. Amaya then filed an Amended Complaint, which "voluntarily dismiss[ed] all [the] state claims" she'd initially pled. Amended Complaint [ECF No. 8] at 1 n.1. We dismissed Amaya's Amended Complaint as a shotgun pleading and gave her leave to file another complaint. *See Amaya v. Vilsack*, 2024 WL 1285162, at *4 (S.D. Fla. Mar. 26, 2024) (Altman, J.) (observing that the Amended Complaint "impermissibly incorporate[d] multiple claims into each count").

In her Second Amended Complaint, Amaya asserted three counts under Title VII: "discrimination based on sex," SAC ¶¶ 40–69 (Count I); "retaliation for reporting discrimination based on sex," *id.* ¶¶ 70–99 (Count II); and "hostile work environment based on sex," *id.* ¶¶ 100–13 (Count III). On July 23, 2024, we dismissed Amaya's hostile-work-environment claim, concluding that "Volpe's conduct," as alleged, "simply [wa]sn't 'extreme' enough to plausibly and objectively create a hostile work environment[.]" *Amaya v. Vilsack*, 2024 WL 3509583, at *9 (S.D. Fla. July 23, 2024) (Altman, J.) (quoting *Booth v. Pasco County*, 829 F. Supp. 2d 1180, 1189 n.5 (M.D. Fla. 2011) (Moody, J.)). Vilsack has since moved for summary judgment on Amaya's remaining claims. *See generally* Def.'s MSJ. We'll consider that motion here.

## THE LAW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms,

this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See ibid.*

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also Green v. Northport*, 599 F. App'x 894, 895 (11th Cir. 2015) ("The district court could consider the record as a whole to determine the undisputed facts on summary judgment."); *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record" (quoting FED. R. CIV. P. 56 advisory committee's note to 2010 amendment)). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

In sum, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Children & Families*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

## ANALYSIS

Vilsack seeks summary judgment on both of Amaya's remaining Title VII claims, arguing that "Amaya has not, and cannot, meet her burden of establishing her claims of disparate treatment or retaliation." Def.'s MSJ at 9. We'll consider his Motion separately as to each count.

### I.      Count I: Sex Discrimination

According to Vilsack, Amaya's disparate-treatment claim fails as a matter of law because "(1) she has not shown that the USDA took any actual personnel action within the meaning of 5 U.S.C. § 2302(2)(A), and (2) even if she had, she has no evidence (beyond her own baseless speculation) that any purported differential treatment was tainted by discrimination based on her sex." Def.'s MSJ at 3. Because we agree with the first point, we need not reach the second.

In its provision governing federal employment, Title VII requires that "[a]ll personnel actions affecting employees . . . be made free from any discrimination based on . . . sex[.]" 42 U.S.C. § 2000e-16(a). The Supreme Court has explained that a "'personnel action' [ ] include[s] most employment-related decisions, such as appointment, promotion, work assignment, compensation, and performance reviews." *Babb v. Wilkie*, 589 U.S. 399, 405 (2020) (*Babb I*) (citing 5 U.S.C. § 2302(a)(2)(A)). To prevail on a disparate-treatment claim, then, a plaintiff must establish that the "personnel action[ ] [was] made

in 'a way that [was] tainted by differential treatment based on' a protected characteristic." *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1199 (11th Cir. 2021) (*Babb II*) (quoting *Babb I*, 589 U.S. at 406); *see also Buckley v. Sec'y of Army*, 97 F.4th 784, 793 (11th Cir. 2024) ("The upshot . . . is that the law 'does not require proof that an employment decision would have turned out differently if [sex] had not been taken into account—i.e., does not require that [sex] discrimination be the but-for cause of an adverse personnel decision.'" (cleaned up) (quoting *Babb II*, 992 F.2d at 1199)).

A plaintiff "may survive a motion for summary judgment on her Title VII discrimination claim by presenting circumstantial evidence raising a reasonable inference of intentional discrimination by her employer." *Troupe v. DeJoy*, 861 F. App'x 291, 294 (11th Cir. 2021) (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). Under the *McDonnell Douglas* framework, a plaintiff *may* meet her burden by "showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (cleaned up); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (outlining the *prima facie* elements of discrimination). But failing to satisfy *McDonnell Douglas*—and specifically its requirement that the plaintiff "produce a comparator"— "does not necessarily doom the plaintiff's case." *Smith*, 644 F.3d at 1328. Rather, "the plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Ibid.* (cleaned up).

Still, while the Eleventh Circuit no longer subjects federal-sector employees to *McDonnell Douglas*, *see Buckley*, 97 F.4th at 794–95 ("[T]he burden under *McDonnell Douglas* is heavier than Title VII imposes on a plaintiff in a federal-sector case[.]"), a plaintiff still must establish that her "protected characteristic played [some] part in her employer's process in reaching an *adverse employment decision*," *id.* at 794 (emphasis added); *see also Holland v. Gee*, 677 F.3d 1047, 1056 (11th Cir. 2012) ("In a Title

VII case, an adverse employment action is not only an element of the prima facie case, but also of the claim itself." (cleaned up)).[2] An employer's conduct may form the basis of a Title VII discrimination claim only if it "adversely affects the employee's employment status or materially 'alters the employee's compensation, terms, conditions, or privileges of employment.'" *Thomas v. Dejoy*, 2021 WL 4992892, at \*7 (N.D. Fla. July 19, 2021) (Wetherell, J.) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)). Such "actions consist of things that affect continued employment or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts—as well as other things that are similarly significant standing alone." *Monaghan v. Worldpay US, Inc.*, 955 F.3 855, 860 (11th Cir. 2020) (first citing *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238–39 (11th Cir. 2001); and then citing *Gillis v. Ga. Dep't of Corr.*, 400 F.3d 883, 888 (11th Cir. 2005)).

Here, Vilsack maintains that "Amaya has not shown that she suffered an adverse employment action," foreclosing her disparate-treatment claim as a matter of law. Def.'s MSJ at 6. We agree.

According to Vilsack, Amaya's Second Amended Complaint "allege[d] only *one* personnel action . . . which could possibly establish that Amaya suffered an adverse employment action sufficient to sustain" a discrimination claim: that she was "suspended without pay in April 2022." Def.'s MSJ at 2 (cleaned up); *see also Amaya*, 2024 WL 3509583, at \*3 ("[S]uspension without pay constitutes an adverse employment action under Title VII." (citing *Davis v. Leg. Servs. Ala., Inc.*, 19 F.4th 1261, 1266 (11th Cir. 2021))). Over the course of discovery, however, we learned that Amaya "has never been suspended while working at the USDA," either with or without pay. Def.'s SOF ¶ 9 (citing Amaya Dep. at 59:19–24, 69:2–9, 74:3–25); *see* Pl.'s Resp. SOF ¶ 9 ("Undisputed."); *see also* Amaya Dep. at

---

[2] As Vilsack rightly notes, the "Eleventh Circuit interchangeably uses the phrases 'adverse personnel action,' 'adverse personnel decision,' 'adverse employment action,' and adverse employment decision." Reply [ECF No. 57] at 3 n.4 (first citing *Buckley*, 97 F.4th at 792; then citing *Babb II*, 992 F.3d at 1204; then citing *Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1355 (11th Cir. 2024); and then citing *Burke v. U.S. Postal Serv.*, 2023 WL 8841352 (11th Cir. Dec. 21, 2023)).

68:21–24 ("Q. And I'm speaking as broadly as possible, either a suspension with pay, a suspension without pay; that's never happened to you? A. Never happened.").

Instead, Amaya only received a "Notice of *Proposed* Suspension" from Volpe in April 2022. Def.'s SOF ¶ 5 (emphasis added) (citing Notice of Proposed Suspension at 1–8); *see also* Pl.'s Resp. SOF ¶ 5 ("Undisputed."). But Miranda "did not sustain the proposed discipline against Amaya" and reduced her punishment to "a letter of reprimand." Def.'s SOF ¶ 7 (citing Decision on Proposed Suspension at 1); *see also* Pl.'s Resp. SOF ¶ 7 ("Undisputed that Miranda reduced the discipline of suspension to reprimand.").

The "Eleventh Circuit has emphasized that reprimands are not sufficiently adverse unless they result in some tangible and negative effect on employment." *Harper v. Vilsack*, 2024 WL 3551510, at *5 (S.D. Fla. July 26, 2024) (Altonaga, C.J.) (first citing *Henderson v. City of Birmingham*, 826 F. App'x 736, 741 (11th Cir. 2020); and then citing *Barnett v. Athens Reg'l Med. Ctr. Inc.*, 550 F. App'x 711, 713 (11th Cir. 2013)). As Vilsack sees it, the letter had no such effect on Amaya's employment because it wasn't made part of her "permanent record," Def.'s SOF ¶ 8 (citing Decision on Proposed Suspension at 1); *see also* Pl.'s Resp. SOF ¶ 8 ("Undisputed."), and didn't prevent Amaya from receiving either "the highest rating an employee could receive" in her following performance appraisal, Def.'s SOF ¶¶ 11–12 (first citing Performance Review [ECF No. 50-4] at 13; and then citing Amaya Dep. at 35:4–10); *see also* Pl.'s Resp. SOF ¶¶ 11–12 ("Undisputed[.]"), or a "timely" pay raise, Def.'s SOF ¶ 16 (citing Amaya Dep. at 37:10–38:2); *see also* Pl.'s Resp. SOF ¶ 16 ("Undisputed."). Even after viewing the evidence in the light most favorable to Amaya—and drawing all reasonable inferences in her favor[3]— we conclude that Amaya hasn't "come forward with [any] specific facts" suggesting otherwise. *Bailey*, 284 F.3d at 1243.

---

[3] As we must. *See Pennington*, 261 F.3d at 1265.

10

Amaya first attacks the Proposed Notice of Suspension, claiming that it "falsely alleged that Ms. Amaya recorded [Volpe]" and that it "included Ms. Lopez'[s] allegations [against Amaya.]" Pl.'s Resp. SOF ¶¶ 36–37 (first citing 2d Volpe Dep. at 16:3–23, 33:8–34:7; and then citing *id.* at 17:24–18:14). She also takes issue with the Notice describing her conduct as "aggressive" and characterizing her behavior as involving "tirades[.]" *Id.* ¶ 32 (quoting 2d Volpe Dep. at 32:1–25); *see also* Notice of Proposed Suspension at 2 ("You then became aggressive and began a tirade stating that I had no idea what goes on[.]"). But, because Volpe's proposal *didn't* result in an adverse employment action, the contents of the Notice are irrelevant. *See Henderson*, 826 F. App'x at 741 ("Although [the plaintiff] alleges he was subjected to internal discipline and investigation, he does not say how, if at all, these actions affected the terms, conditions, or privileges of his employment. As a result, his disparate-treatment discrimination claim fails.").

In fact, Amaya offers no evidence from which a reasonable jury could infer that either the Notice or her letter of reprimand had *any* negative effect on her employment. Despite acknowledging that she was rated "fully successful" on her review, Amaya Dep. at 35:4–7 ("Q. Were there any of the elements, performance elements that you were graded on where Mr. Volpe marked you as, quote, does not meet fully successful, end quote? A. There's no markings there."), Amaya nonetheless maintains that Volpe "wrote several false and inconsistent notes about [her] performance and conduct on the performance evaluation," Pl.'s Resp. SOF ¶ 39 (citing SAC ¶¶ 79–81). Amaya, however, hasn't produced any evidence to substantiate that allegation, instead citing only to her pleading. And pleadings *aren't* evidence and thus *aren't* sufficient to withstand summary judgment. *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 598–99 (11th Cir. 1995) ("In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him." (cleaned up)).

In any event, "unfavorable performance reports and disciplinary memoranda are not sufficiently adverse if they did not cause the plaintiff 'any present or foreseeable future economic

injury.'" *Henderson*, 826 F. App'x at 741 (quoting *Davis*, 245 F.3d at 1240)); *see also Johnson v. Potter*, 732 F. Supp. 2d 1264, 1279 (M.D. Fla. 2010) (Bucklew, J.) (concluding that, because "[t]he disciplinary 'write-ups' were not permanent[,] . . . [they] did not affect [the plaintiff's] pay or employment conditions [and did] not constitute an adverse employment action for purposes of a Title VII discrimination claim"). And the undisputed evidence shows that Amaya suffered no such economic injury. *See* Def.'s SOF ¶ 16 ("Amaya's within-grade increase from GS 12-7 to GS 12-8 occurred timely and in conformity with the standard progression for federal employees whose performance is at an acceptable level and who has completed the required waiting period for advancement to the next step." (citing Amaya Dep. at 37:10–38:2)); Pl.'s Resp. SOF ¶ 16 ("Undisputed."). Amaya has thus failed to create a genuine issue of fact as to the effect of the Notice of Proposed Suspension (or the reprimand letter) on the conditions of her employment.

Recognizing that those acts aren't enough, Amaya tries to save her disparate-treatment claim by directing us to four *other* allegedly discriminatory acts taken by her supervisors. But nothing in the record suggests that any of these acts materially altered "the terms, conditions, or privileges of [her] job" in a "real and demonstrable way" either. *Henderson*, 826 F. App'x at 741 (quoting *Davis*, 245 F.3d at 1239).

*First*, Amaya says that Volpe required her to "speak well of [Volpe's] male direct supervisor report Tony Knapick to other employees." Pl.'s Resp. SOF ¶ 34 (citing 2d Volpe Dep. at 42:2–47:22). In 2017, Amaya sent Volpe an email recounting how Volpe told her that, "instead of being part of the problem, [Amaya] should go around and tell people that Tony Knapick was the highest ranking in the past selection process, was selected by the panel and not by [Volpe], and that [Volpe has] known him for 20 years." 2d Volpe Dep. at 46:9–14; *see also id.* at 46:15–17 ("[Q.] Is that what Ms. Amaya stated to you in this email? A. That's what she wrote."). Amaya never explains how Volpe's conduct here

constitutes a "personnel action," 42 U.S.C. § 2000e-16(a), much less one that materially affected the terms and conditions of her employment.[4] So, this action cannot form the basis of her claim.

*Second*, Amaya alleges that Volpe "required" her "to come to his office for meetings alone, and for meetings which he admitted he could have held via phone or [Microsoft] Teams as he did for other male employees." Pl.'s Resp. SOF ¶ 35 (first citing 1st Volpe Dep. at 189:23–191:17; and then citing 2d Volpe Dep. at 19:15–21:22). But having to attend meetings isn't an adverse employment action either. *See Thomas v. Clarke Cnty. Sch. Dist.*, 2019 WL 3978411, at *5 (M.D. Ga. Aug. 22, 2019) ("Being summoned to frequent meetings . . . does not amount to an adverse employment action."). That's really the end of that.

*Third*, Amaya points to her allegation that "Volpe and [ ] Miranda refused multiple times to remove [ ] Volpe from supervising [ ] Amaya after she complained of [Volpe's] prohibited activity[.]" Plaintiff's Response to the Defendant's Motion for Summary Judgment ("Pl.'s MSJ Resp.") [ECF No. 56] at 5. As evidence for this claim, Amaya cites the following exchange from Volpe's deposition:

> Q.    Mr. Volpe, prior to you no longer being employed in the D.C. office, had Ms. Amaya ever requested that you be removed as her supervisor? . . .
>
> A.    I believe -- I believe she did.
>
> Q.    And were you immediately removed as her supervisor?
>
> A.    No.

---

[4] Even if Amaya *had* shown that this action constituted an adverse personnel action, Vilsack is right that "Amaya improperly raises this claim for the first time in her Response; it does not appear in the SAC." Reply at 6; *see generally* SAC. Because each "discrete discriminatory act . . . [constitutes a] separate claim[ ]" under Title VII, *Freeman v. City of Riverdale*, 2008 WL 11333375, at *12 (N.D. Ga. Aug. 15, 2008), Amaya's failure to plead this new factual basis for her discrimination claim in her complaint prevents her from raising it for the first time here, *see Lightfoot v. Henry Cnty. Sch. Dist.*, 771 F.3d 764, 779 (11th Cir. 2014) ("[T]he district court did not err in declining to consider this new factual basis when it was raised in [the plaintiff's] opposition to summary judgment. 'A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.'" (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004))).

1st Volpe Dep. at 42:12–22; *see also* Pl.'s Resp. SOF ¶ 41 ("Ms. Amaya repeatedly requested to both Mr. Volpe and Mr. Miranda that Mr. Volpe be removed from supervising her for his prohibited activity to no avail." (citing 1st Volpe Dep. at 42:12–22)). This testimony not only falls short of demonstrating "multiple" transfer requests, Pl.'s Resp. SOF ¶ 41, but it also makes no mention of Miranda at all. Plus, Volpe's speculation that he "believe[d]" Amaya submitted a transfer request, *see* 1st Volpe Dep. at 42:19, is squarely refuted by Amaya's *own* testimony that she never followed through with requesting a transfer:

> Q.     Okay. So did you put yourself on a transfer list at some point?
>
> A.     Well, after I spoke with this lady[,] I can't recall her name, but she said send me information about the reasons why you want to transfer, who are your supervisors, and so I just -- so to send her the information. So that's what was requested from me.
>
> Q.     And did you send this person the requested information?
>
> A.     I did not[.]

Amaya Dep. at 20:8–17.

At "summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge." *Citizens Concerned About Our Children v. Sch. Bd. of Broward Cnty.* 193 F.3d 1285, 1295 n.11 (11th Cir. 1999) (citing FED. R. CIV. P. 56(e)). And the Eleventh Circuit has "said repeatedly that speculation about a fact or result is insufficient to survive summary judgment[,]" because an "inference based on speculation and conjecture is not reasonable." *Gadsby v. Am. Golf Corp. of Cal.*, 557 F. App'x 837, 840 (11th Cir. 2014) (quoting *Avenue CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013)). That's especially true when "a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact[.]" *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 656 (11th Cir. 1984).

Amaya's appeal to Volpe's speculation about whether she applied for a transfer "creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419

F.3d 1169, 1181 (11th Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995)). At most, Amaya has offered only a "mere scintilla of evidence," *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (cleaned up)—one she herself admits is mistaken—and which thus cannot create a "*genuine* dispute as to any material fact" regarding her abandoned transfer request, *Sharman v. City of Tallahassee*, 831 F. App'x 923, 925 (11th Cir. 2020) (emphasis added) (quoting FED. R. CIV. P. 56(a)); *see also Gogel*, 967 F.3d at 1134 ("[T]here must be enough of a showing that the jury could reasonably find for that party." (cleaned up)).

But here's the thing: Even if Amaya had presented some evidence about this transfer request, her claim would *still* fail. For a disparate-treatment claim, the denial of a transfer request isn't materially adverse if the plaintiff suffered "no reduction in pay, prestige, or responsibility by remaining in the same position[.]" *Hawkins v. BBVA Compass Bancshares, Inc.*, 613 F. App'x 831, 836 (11th Cir. 2015); *see also Hinson v. Clinch Cnty. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000) ("[T]ransfer to a different position can be 'adverse' if it involves a reduction in pay, prestige[,] or responsibility." (citing *Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1448 (11th Cir. 1998))); *Richardson v. Jackson*, 545 F. Supp. 3d 1318, 1327–28 (N.D. Ga. 2008) ("The clear weight of authority holds that a lateral transfer (or denial of a transfer request) is ordinarily not regarded as an adverse employment action under Title VII merely because the employee subjectively finds one position preferable to the other, absent some evidence that the plaintiff suffered a material loss of pay, prestige, or other quantifiable benefit." (first citing *Weston-Brown v. Bank of Am. Corp.*, 167 Fed. App'x 76, 80 (11th Cir. 2006); then citing *Wall v. Trust Co. of Ga.*, 946 F.2d 805, 808 (11th Cir. 1991); then citing *Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996); and then citing *Tarrance v. Montgomery Cnty. Bd. of Educ.*, 157 F. Supp. 2d 1261, 1266 (M.D. Ala. 2001))).

Here, Amaya doesn't identify any evidence suggesting "that [the requested] transfer . . . would represent an increase in pay, prestige or responsibility." *Gonzalez v. Fla. Dep't of Hwy. Safety & Motor*

*Vehicles*, 237 F. Supp. 2d 1338, 1348 (S.D. Fla. 2002) (Hoeveler, J.). In fact, Amaya testified that the transfer *wouldn't* have changed her role—just her office location. *See* Amaya Dep. at 18:22–19:1 ("Q. And for positions like that where it's a transfer, you would have essentially kept your same position as a supervisory PPQ officer, you would have just moved to a different physical location? A. Correct."). Nor would it have increased her salary, which followed the seniority-based "standard progression for federal employees." Def.'s SOF ¶ 16 (citing Amaya Dep. at 37:10–38:2); *see also* Pl.'s Resp. SOF ¶ 16 ("Undisputed."); Amaya Dep. at 37:14–17 ("Q. -- there's a formula that the government has? A. Yeah, they have tables and they say how many years between when you get to the step, how many years before you get to the next step.").

Still resisting, Amaya directs us to *Harper v. Vilsack* (a companion case also premised on Volpe's allegedly discriminatory conduct), *see* 2024 WL 3551910 (S.D. Fla. July 26, 2024) (Altonaga, C.J.), in which our Chief Judge "concluded that a reasonable jury could find that the denial of a change in supervisor" was sufficiently material to form the basis of a viable Title VII disparate-impact claim, Pl.'s MSJ Resp. at 7 (first citing *Rayner v. Dep't of Veterans Affs.*, 648 F. App'x 911, 915 (11th Cir. 2017); and then citing *Harper*, 2024 WL 3551910). The *Harper* Court (it's true) held that, "assuming a request was made and denied, it is for a jury to decide whether the circumstances rendered the denial an adverse action." *Harper*, 2024 WL 3551910, at *5 (citing *Lanier v. Bd. of Trs.*, 2014 WL 657541, at *7 (N.D. Ala. Feb. 20, 2014)). But *Harper* didn't engage with the "clear weight of authority" demonstrating that the denial of a lateral transfer request is not materially adverse "absent some evidence that the plaintiff suffered a material loss of pay, prestige, or other quantifiable benefit." *Richardson*, 545 F. Supp. 3d at 1327–38 (collecting cases).[5] Given Amaya's testimony that her requested transfer was only from

---

[5] Instead, *Harper* relied only on the Northern District of Alabama's ruling in *Lanier*, which (in turn) cited to two Title VII *retaliation* cases for the proposition that "[f]ailure to transfer an employee can qualify as an adverse action. . . depend[ing] on the context and whether a reasonable person in the employee's situation would consider the action adverse." *Lanier*, 2014 WL 657541, at *7 (first citing *Webb–Edwards v. Orange Cnty. Sheriff's Off.*, 525 F.3d 1013, 1028–29 (11th Cir. 2008); and then citing

one office to another, *see* Amaya Dep. at 18:22–19:1 ("Q. . . . [Y]ou would have just moved to a different physical location? A. Correct."), no reasonable juror could find that denying that requested transfer amounted to a "reduction in pay, prestige or responsibility," *Hinson*, 231 F.3d at 829 (cleaned up). So, even if Amaya *had* submitted a transfer request—and even if that request had been denied— that denial would nonetheless be insufficient as a matter of law to support her disparate-treatment claim.

*Fourth*, Amaya tries to base her disparate-treatment claim on "Volpe and [ ] Miranda immediately removing a male employee from under [her] direct supervision when the male employee complained about [ ] Amaya and wanted her removed as his supervisor[.]" Pl.'s MSJ Resp. at 5; *see also* 2d Volpe Dep. at 48:22–25 ("Q. . . . At any time while you were supervising Ms. Amaya, was Mr. Ramos removed from under Ms. Amaya's supervision? A. Yes."). Because of that transfer, Amaya no longer could "discipline male employee Ramos . . . but instead had to submit her concerns about [ ] Ramos to [ ] Volpe[.]" Pl.'s Resp. SOF ¶ 43 (citing 2d Volpe Dep. at 65:1–66:9).

"[C]ourts in the Eleventh Circuit consistently hold that loss of supervisory responsibility does not constitute an adverse employment action without a material change in the terms or conditions of

---

*Taylor v. Roche*, 196 F. App'x 799, 803 (11th Cir. 2006)). But we apply a different—and more lenient— understanding of what constitutes an adverse employment action to Title VII *retaliation* claims than we do for *disparate-treatment* claims. *Compare Monaghan*, 955 F.3d at 857 ("[T]he retaliation is material if it 'well might have dissuade[d] a reasonable worker from making or supporting a charge of discrimination.'" (quoting *Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 57 (2006))), *with Sharpe v. Global Sec. Int'l*, 766 F. Supp. 2d 1272, 1291 (S.D. Ala. 2011) ("In the Title VII discrimination context, . . . 'only those employment actions that result in a serious and material change in the terms, conditions, or privileges of employment will suffice.'" (quoting *Howard v. Walgreen Co.*, 605 F.3d 1239, 1245 (11th Cir. 2010))); *see also Crawford v. Carroll*, 529 F.3d 961, 974 n.14 (11th Cir. 2008) ("It should be noted, however, that while the new standard enunciated in *Burlington* applies to Title VII retaliation claims, it has no application to substantive Title VII discrimination claims."). So, those retaliation cases don't help us much in evaluating Amaya's *disparate-treatment* claim under the proper standard—*viz.*, whether the denial of a transfer request "entail[ed] a serious and material change in the terms, conditions, or privileges of employment." *Gaddis v. Russell Corp.*, 242 F. Supp. 2d 1124, 1145 (M.D. Ala. 2003) (citing *Smith v. Ala. Dep't of Corr.*, 145 F. Supp. 2d 1291, 1299 (M.D. Ala. 2001)).

employment." *Arora v. Miami-Dade County*, 2024 WL 4286220, at \*8 (S.D. Fla. Sept. 25, 2024) (Damian, J.) (collecting cases). And Ramos's transfer had no effect on Amaya's pay grade, job title, or salary. *See* Def.'s SOF ¶ 1 ("At all times material to her claims, [Amaya] was employed as a Supervisory Plant Protection and Quarantine [ ] Officer[.]" (citing Amaya Dep. at 8:1–22)); Pl.'s Resp. SOF ¶ 1 ("Undisputed."); *see also* Def.'s SOF ¶ 16 ("Amaya's within-grade increase from GS 12-7 to GS 12-8 occurred timely and in conformity with the standard progression for federal employees[.]" (citing Amaya Dep. at 37:10–38:2)); Pl.'s SOF ¶ 16 ("Undisputed."). It is "axiomatic that 'Title VII is not designed to make federal courts sit as a super-personnel department that reexamines an entity's business decisions[.]'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1203 (11th Cir. 2013) (quoting *Davis*, 245 F.3d at 1245). That principle is no less salient in evaluating the delegation of assignments by "public entities[,] . . . which must balance limited personnel resources with the wide variety of critically important and challenging tasks expected of them by the public." *Davis*, 245 F.3d at 1244.

As such, even if Amaya "arguably suffered some negative impact to the practical exercise of [her] supervisory authority[,] [she] remained in the same position with the same pay and benefits, [so] no reasonable jury could find that the [USDA's] actions adversely impacted a term or condition of [her] employment, or were so adverse as to be analogous to a discharge, suspension, or demotion." *Byrd v. Gwinnett Cnty. Sch. Dist.*, 2024 WL 1377644, at \*4 (N.D. Ga. Mar. 31, 2024); *see also Kidd*, 731 F.3d at 1204 ("[S]ome blow to a plaintiff's professional image . . . is simply not enough to prevail." (cleaned up)). Ramos's transfer—which amounted to "a loss of [Amaya's] supervisory responsibility [over one employee], not a loss of salary or benefits—does not rise to [the] level" of a materially adverse employment action. *Kidd*, 731 F.3d at 1196.

Unable to identify a single adverse employment action to support her disparate-treatment claim, Amaya resorts to arguing that she can overcome summary judgment "either by showing that her . . . sex played a role in [the] Defendant's actions or [by] presenting a convincing mosaic of

circumstantial evidence." Pl.'s MSJ Resp. at 5 (first citing *Lewis v. Sec'y of U.S. Air Force*, 2022 WL 2377164 (11th Cir. June 30, 2022); and then citing *Tynes v. Fla. Dep't of Juvenile Just.*, 88 F.4th 939, 947 (11th Cir. 2023)). Not so.

Although a plaintiff can survive "summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory *intent*," *Smith*, 644 F.3d at 1328 (emphasis added), the Eleventh Circuit has "never suggested that a plaintiff can survive summary judgment without any evidence that she experienced any adverse employment action at all," *Coles v. Post Master Gen.*, 711 F. App'x 890, 896 (11th Cir. 2017); *see also ibid.* ("Allowing a plaintiff to go beyond the *McDonnell Douglas* framework to prove her employer's discriminatory intent does not abolish the requirement that the plaintiff have suffered an adverse employment action."); *Lewis v. Kendall*, 2022 WL 19408074, at *4 (N.D. Fla. Dec. 12, 2022) (Wetherell, J.) ("[A]lthough *Babb II* recognized that the causation standard for federal-sector claims under Title VII is different from the causation standard for other Title VII claims, it did not suggest that any of the other elements of the claims were different."). And Amaya has simply failed to put forth any evidence that she suffered a "serious and material change in the terms, conditions, or privileges of [her] employment." *Davis*, 245 F.3d at 1239.

We therefore **GRANT** the Defendant's Motion for Summary Judgment on Count I.

## II.     Count II: Retaliation

Vilsack also argues that he's entitled to summary judgment on Amaya's retaliation claim because Amaya "was not the subject of an adverse employment action." Def.'s MSJ at 7 (cleaned up). As with her disparate-treatment claim, to survive summary judgment on her retaliation claim, Amaya must present some evidence that would allow a reasonable jury to infer that she suffered an adverse employment action. *See Terrell*, 98 F.4th at 1355 ("To make a prima facie case of retaliation, [the plaintiff] must show that she (1) engaged in protected EEO activity and (2) suffered an adverse employment action, and (3) she must establish a causal link between the protected activity and the

adverse action." (citing *Crawford*, 529 F.3d at 970)). But, while "retaliation claims also require that an employment action be 'materially adverse,' in the retaliation context this means that the action 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Harper*, 2024 WL 3551910, at *9 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Crawford*, 529 F.3d at 974 n.14 ("The two standards are distinct and different and, as noted, the *Burlington* standard applies to a wider range of employer conduct.")). Whether that's the case "will often depend upon the particular circumstances." *Burlington*, 548 U.S. at 68.

Once again, Amaya hasn't come up with any evidence that creates a triable issue as to any of the purportedly adverse actions she faced. Amaya concedes that the "[Letter of] Reprimand itself alone [sic] would fail as an independent basis for [her] retaliation claim." Pl.'s MSJ Resp. at 7 (emphasis omitted); *see also Byrd*, 2024 WL 1377644, at *36 ("[T]he Eleventh Circuit has held that written counseling does not constitute a materially adverse employment action where plaintiff failed to allege that it had any significant impact on his employment, even under the more lenient standard for retaliation claims." (cleaned up) (collecting cases)). Instead, she says that, as in *Harper*, "a reasonable jury could find that the denial of a change in supervisor, as was done repeatedly in this case, would have dissuaded a reasonable worker from reporting discrimination." Pl.'s MSJ Resp. at 7 (first citing *Rayner*, 684 F. App'x at 915; and then citing *Harper*, 2024 WL 3551910).

But our summary-judgment record is far scanter than the record in *Harper*. In that case, the court concluded that a reasonable jury could find that the plaintiff made a transfer request based on an "affidavit" in the summary-judgment record stating that the plaintiff's "EEO Counselor informed her 'that the requests [for a transfer] were provided to management[,]' which 'did not honor the request[.]'" *Harper*, 2024 WL 3551910, at *5 (cleaned up). Here, by contrast, not only did Amaya not submit any similar competent evidence, but she also directly testified at her deposition that she *never* provided the required information to even begin her transfer process. *See* Amaya Dep. at 20:15–17

("Q. And did you send this person the requested information? A. I did not[.]"). Given the "context" of the abandoned application, *Burlington*, 548 U.S. at 69, "it is impossible to infer . . . [Amaya] suffered an adverse employment action" when she "never applied for any vacant position," *Jones v. Ala. Power Co.*, 2007 WL 3496720, at *9 (M.D. Ala. Nov. 14, 2007); *see also Varnado v. Mukasey*, 2010 WL 2196263, at *4 (S.D. Fla. June 1, 2010) (Cooke, J.) ("Plaintiff's claim of failure to promote must fail because she admitted at deposition that she never actually applied for a promotion."); *Moore v. Shands Jacksonville Med. Ctr., Inc.*, 2013 WL 11327134, at *23 (M.D. Fla. Oct. 18, 2013) ("[The Plaintiff]'s non-promotion to a position for which he never applied is insufficient to establish a retaliation claim."), *aff'd sub nom. Moore v. Shands Healthcare, Inc.*, 617 F. App'x 924 (11th Cir. 2015). Amaya's nonexistent transfer request thus cannot serve as the adverse action underlying her retaliation claim.

Amaya's alternative theory—that, "after complaining about [ ] Volpe, he *increased* summoning her into countless impromptu meetings to verbally criticize her performance, threaten future reprimands, and to threaten her continued employment at USDA," Pl.'s MSJ Resp. at 8 (emphasis added) (citing Pl.'s Resp. SOF)—doesn't fare any better. As we've said, Amaya doesn't substantiate this claim with *any* record evidence—and instead cites only her pleading on this point. *See* Pl.'s Resp. SOF ¶¶ 47–48 (citing only to the SAC). At summary judgment, that just won't cut it. *Resolution Tr. Corp.*, 43 F.3d at 599 ("[A] party may not rely on his pleadings to avoid judgment against him." (cleaned up)). Plus, to the extent that the record does indicate that Amaya had to attend in-person meetings with Volpe, *see, e.g.*, 2d Volpe Dep. at 34:8–16 ("Q. [O]n March 24, 2022, you stated this is -- that you sent Ms. Amaya an email for her to come to your office and she didn't want to come to your office, correct? A. Correct. Q. But you instead required that she come to your office anyway, correct? A. Yes."), no reasonable jury could find that this common workplace requirement "would have dissuaded a reasonable employee from engaging in protected activity," *Aburaad v. Haines City*, 2022 WL 861578, at *5 (M.D. Fla. Mar. 23, 2022) (Barber, J.); *see also Byrd*, 2024 WL 1377644, at *35 ("[The] act of

meeting with [the plaintiff] and discussing the matter is not an adverse employment action as a matter of law[.]" (quoting *Williams v. KS Mgmt. Servs., LLC*, 2020 WL 2736571, at \*7 (S.D. Tex. May 26, 2020))).

After viewing all the record evidence in Amaya's favor—and drawing all reasonable inferences for her—we conclude that the allegedly "substantial conduct by her supervisors" in which Amaya roots her retaliation claim, Pl.'s MSJ Resp. at 9—even "when taken together," *King v. Fulton County*, 2010 WL 2978072, at \*6 (N.D. Ga. June 28, 2010)—does not meet the "threshold level of substantiality that must be met for unlawful discrimination to be cognizable under the anti-retaliation clause," *Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998); *see also Rainey v. Holder*, 412 F. App'x 235, 238 (11th Cir. 2011) ("'[P]etty and trivial' actions by the defendant are not sufficiently adverse." (quoting *Crawford*, 529 F.3d at 974 n.13)). We therefore **GRANT** the Defendant's Motion for Summary Judgment on Count II as well.

\* \* \*

After careful review, then, we hereby **ORDER and ADJUDGE** as follows:

1. The Defendant's Motion for Summary Judgment [ECF No. 49] is **GRANTED**.

2. Summary Judgment is **ENTERED** in favor of the Defendant, Thomas J. Vilsack, and against the Plaintiff, Maria Amaya, on Counts I and II of the Plaintiff's Second Amended Complaint [ECF No. 37].

3. Pursuant to Federal Rule of Civil Procedure 58, the Court will enter final judgment separately.

4. This case shall remain **CLOSED**. All other deadlines are **TERMINATED**, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in the Southern District of Florida on October 24, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record